IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDDIE FELICIANO, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 15-cv-3371 |
| v. | : | |
| | : | CRIMINAL ACTION |
| UNITED STATES OF AMERICA, | : | NO. 13-cr-327 |
| Defendant. | : | |
| | : | |

PRATTER, J.                                                                 APRIL 12, 2016

**MEMORANDUM**

In his § 2255 petition, Freddie Feliciano presents several challenges to his sentence for

bank robbery, all of which focus on his counsel's effectiveness.  The Government argues that

Mr. Feliciano's counsel provided him with competent representation, and that therefore his

claims are without merit.  This Court finds that Mr. Feliciano's counsel competently represented

him throughout the proceedings in this matter and, therefore, will deny Mr. Feliciano's petition.

FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2013, officers from the Montgomery Township Police Department

responded to a call from the Citizens Bank branch located inside the Giant supermarket in

Montgomeryville, Pennsylvania.  According to witness reports, an "Hispanic-looking" male

wearing a red fleece jacket, a Pittsburgh Pirates baseball cap, and silver-rimmed sunglasses

presented a note demanding money and a blue deposit bag to a bank employee, and, once the

employee had filled the bag, fled in a Toyota Corolla with New Jersey plates.  As the man got

into the car, a dye pack in the bag exploded.

About fifteen minutes later, a Towamencin Township officer saw a green Toyota Corolla

with New Jersey plates traveling on Sumneytown Pike in the area of Valley Forge Road.  The

officer saw that the vehicle was being operated by an Hispanic male in a red shirt, who was the only person in the car.  The officer conducted a traffic stop, and as the officer approached the vehicle, he observed that the driver's side rear door was smeared with red dye.  When he reached the driver's door, he saw a Pittsburgh Pirates baseball cap, a set of silver-rimmed sunglasses, and a red fleece jacket in plain view on the front passenger seat and floor board.  The officer also noted that the driver's pants had red dye stains.  The officer asked the driver, who was at some point identified as defendant Freddie Feliciano, to step out of the car.

Other officers arrived on the scene, and Mr. Feliciano was searched.  Officers found a note on Mr. Feliciano that stated, "Don't be a hero I have a gun if you alert anyone I will start shooting random people.  Put all bills for both drawers no dye packs no games."  The bank employee who had been robbed by Mr. Feliciano was then brought to the scene, at which point he identified Mr. Feliciano as the man who had robbed him.  Mr. Feliciano was then placed under arrest and transported to the Montgomery Township Police Department, where he confessed to robbing the bank and giving a threatening note to the teller.

The grand jury indicted Mr. Feliciano on June 20, 2013 for bank robbery, a violation of 18 U.S.C. § 2113(a).  He pleaded guilty to the one-count indictment on December 5, 2013, pursuant to a plea agreement.[1]  The plea agreement included various stipulations, including a stipulation to the commission of two other bank robberies in the District of New Jersey, which would then be included for purposes of Guidelines calculations and restitution but for which Mr. Feliciano would not be prosecuted.  The Court conducted a thorough guilty plea colloquy,

---

[1] Although the agreement contained an appellate waiver, it expressly acknowledged Mr. Feliciano's right to file a § 2255 petition raising the issue of ineffectiveness of counsel.  All of the claims contained in Mr. Feliciano's petition assert that his counsel was ineffective; thus, the Government has not raised the plea agreement as a bar to the petition.

reviewing with Mr. Feliciano the consequences of his plea, including the stipulation contained in the plea agreement, and determining that Mr. Feliciano knowingly and intelligently entering his plea.

On July 7, 2014, the Court held a sentencing hearing for Mr. Feliciano.  The Court determined that Mr. Feliciano's offense level under the Sentencing Guidelines was 24 and that his criminal history category was III, giving Mr. Feliciano a Guidelines range of between 63 and 78 months.  Despite Mr. Feliciano's counsel's motion for a downward variance and argument that Mr. Feliciano's circumstances, which included a gambling problem, a job loss, and psychological issues, should lead to a sentence at the low end of the guidelines range, the Court imposed a sentence of 78 months' imprisonment, an incarceration period at the top of the Guidelines range.

Mr. Feliciano filed this petition for *habeas* relief under § 2255, asserting that his counsel was ineffective for (1) failing to file a suppression motion because the police description of the robber's car did not match his car, (2) failing to call a psychologist as an expert witness at sentencing in support of a downward departure for diminished capacity, and (3) failing to object to ¶ 52 of the presentence investigation report, which documented a robbery conviction for 16 bank robberies and added three points to Mr. Feliciano's criminal history score, when, according to Mr. Feliciano, those 16 robberies were consolidated as one case and should have only counted as one point.

After the Government responded to Mr. Feliciano's petition, Mr. Feliciano filed what he called objections to the Government's response.  Those "objections," however, contained additional claims of ineffective assistance and were filed before the expiration of the one-year statute of limitations period, in effect amending his original petition.  The newly added claims

are that (1) counsel was ineffective for not requesting a competency hearing prior to his guilty plea hearing, (2) counsel was ineffective for not making sure that Mr. Feliciano fully understood the terms of the guilty plea agreement, and (3) counsel was ineffective for not objecting to "prosecutorial misconduct" during the sentencing hearing.  The Government responded to Mr. Feliciano's new claims, and the matter is now ripe for decision.

LEGAL STANDARDS

Section 2255 allows a prisoner in custody to attack his sentence if it was "imposed in violation of the Constitution or laws of the United States, or [] the court was without jurisdiction to impose such sentence, or [] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  Thus, a petitioner may only prevail on a Section 2255 *habeas* claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure ."  *Hill v. United States,* 368 U.S. 424, 428 (1962).

Mr. Feliciano has filed his § 2255 petition *pro se*.  For practical purposes, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Accordingly, Mr. Feliciano's *pro se* habeas petition is construed liberally.  *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  Nonetheless, the petition must meet certain standards, all as discussed below.

DISCUSSION

A.    Merits

Mr. Feliciano's claims all rest on alleged ineffective assistance of counsel.  These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish a claim of

4

ineffective assistance of counsel, a defendant must satisfy a two-pronged test under *Strickland*.

First, the defendant must show that counsel's performance fell below an objective standard of

reasonableness. *Id.* at 687. Second, the defendant must show that counsel's deficient

performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair

outcome of the proceeding. *Id.* Where, as here, a defendant has entered a guilty plea on the

advice of counsel, the second prong is modified so that the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would have proceeded to trial instead of

pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985). Judicial scrutiny of counsel's

performance must be "highly deferential" and the court must make every effort "to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and

to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In determining

whether assistance of counsel has been ineffective, the court "must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* If a

defendant fails to satisfy one prong of the *Strickland* test, a court need not consider the other

prong. *Id.* at 697.

      1. *Suppression Motion*

Mr. Feliciano contends that his counsel was ineffective because he failed to file a motion

arguing for suppression of evidence because the police's description of the getaway car did not

match his car. According to Mr. Feliciano, witnesses at the scene of the robbery described his

car as a red or blue Toyota Corolla with New Jersey plates, when in fact his car was a greenish

teal Toyota Corolla with New Jersey plates. Based on the description police had of the robber

and his car, the relatively short time between the robbery and Mr. Feliciano's stop, and the

proximity of the stop and the robbery location, however, the police undoubtedly had reasonable suspicion to stop Mr. Feliciano.

An officer may conduct a brief investigatory stop based on reasonable suspicion, arising from articulable facts, that the suspect has committed a crime.[2] *See United States v. Coker,* 223 Fed. App'x. 136,139 (3d Cir. 2007) (citing *Terry v. Ohio,* 392 U.S. 1 (1968)).  A police officer may not stop someone merely because that person "looked suspicious." *Brown v. Texas,* 443 U.S. 47, 52 (1979).  The stop must be based on something more substantial than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry,* 392 U.S. at 27.

Courts use a "totality of the circumstances" test to determine if reasonable suspicion existed at the time of a particular police encounter.  "The test is one of reasonableness given the totality of the circumstances, which can include [the defendant's] location, a history of crime in the area, [the defendant's] nervous behavior and evasiveness, and [an officer's] 'common sense judgments and inferences about human behavior.'" *Johnson v. Campbell,* 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Illinois v. Wardlow,* 528 U.S. 119, 124–25 (2000)).  A court may also consider the temporal and geographic proximity of the suspect to a crime scene and the similarity between the suspect's physical appearance and the details of the reported descriptions of the suspect.  *See United States v. Harple,* 202 F.3d 194, 196–97 (3d Cir. 1999).

Whether or not the precise color of the car differed from the witnesses' description, this is not a case in which police relied on an overly general description.  Here, the police stopped Mr. Feliciano based on information concerning the make, model, and type of plates on his car, as well as a detailed physical description of his own appearance.  It is clear, then, that the police had

---

[2] The Court notes that while Mr. Feliciano seems to argue that police needed probable cause to stop him, he later discusses the issue in terms of reasonable suspicion.  Under *Terry*, 392 U.S. 1, it is clear that the reasonable suspicion standard applies to the stop described here.

reasonable suspicions as predicates to stopping Mr. Feliciano.  In the face of this evidence, a

motion premised on an alleged discrepancy between the supposed color of a car and the actual

car would have been of no substantive moment.  "Counsel is not ineffective for failing to raise

frivolous issues," *McAleese v. Mazurkiewicz,* 1 F.3d 159, 169 (3d Cir. 1993), and, therefore, Mr.

Feliciano's argument regarding the failure of his counsel to file a suppression motion that would

have been meaningless must fail.

> 2.  *Change of Plea Hearing*

Mr. Feliciano advances two claims relating to his change of plea hearing:  (1) counsel

was ineffective for not requesting a competency hearing prior to his guilty plea hearing, and (2)

counsel was ineffective for not making sure that Mr. Feliciano fully understood the terms of the

guilty plea agreement.  As to the first ground, Mr. Feliciano argues that because he mentioned at

his change of plea hearing that his doctors were working on adjusting his medications at the time

of the hearing, his counsel should have explored that issue more fully and gotten a doctor's

evaluation of the medications' side effects before allowing Mr. Feliciano to continue with the

change of plea hearing.

The legal standard for determining a criminal defendant's competence to plead guilty is

the same as the competency standard for standing trial.  *Taylor v. Horn,* 504 F.3d 416, 430 (3rd

Cir. 2007) (citing *Godinez v. Moran,* 509 U.S. 389, 399-400 (1993)).  That is, the Court

considers whether the defendant had "sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding" and whether he possessed "a rational as well as

factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402,

402 (1960); *see also Taylor,* 504 F.3d at 430.  The transcript of the change of plea hearing makes

it abundantly clear that Mr. Feliciano met the standard for competency and gave his counsel no

reason to question his competence.  This Court questioned Mr. Feliciano exhaustively regarding

his mental state and his medications, and Mr. Feliciano responded with detailed answers, listing

his medications, his diagnoses, and his history, which included no hospitalizations and did

include weekly meetings with psychologists.  *See*  N.T. 12/5/13, p. 12-16.  At the conclusion of

all of this, Mr. Feliciano stated that he was feeling "sad," but was "ok."  *Id.* at 16.  Indeed,

throughout the thorough plea colloquy, Mr. Feliciano responded intelligently, participated

actively, and demonstrated an understanding of the proceeding and its import, and the Court

explicitly found that he understood the charges, the maximum possible penalties, and the rights

he waived by pleading guilty.  *Id.* at 55-56.  Because there was no reason to question Mr.

Feliciano's competence, his counsel was not ineffective for failing to do so.

Mr. Feliciano also argues that he did not understand the meaning of the stipulated

robberies in the plea agreement.  Through that stipulation, Mr. Feliciano admitted to two

uncharged robberies in the District of New Jersey and agreed to include those robberies for

Guidelines and restitution purposes in exchange for the Government's agreement not to

separately charge him for those additional robberies or argue for an upward departure.

Essentially, Mr. Feliciano argues that the stipulation is evidence that his counsel did not

negotiate the most advantageous plea deal he could have, implying that if he had fully

understood the terms of the agreement, he would not have pleaded guilty.

The record belies Mr. Feliciano's argument that he did not understand the stipulation

regarding the uncharged robberies.  At the change of plea hearing, the Government discussed this

stipulation in detail, and the Court specifically questioned the Government about the stipulation,

noting that the Court "want[ed] to make sure that Mr. Feliciano is completely aware of" that

stipulation and its effect.  *Id.* at 21-23.  At the conclusion of the Government's recitation of the

terms of the plea agreement, Mr. Feliciano agreed that the Government accurately set forth the terms as he understood them. *Id.* at 25. Mr. Feliciano's argument that he failed to understand the import of the stipulation is disingenuous, at best.

Moreover, the evidence against Mr. Feliciano was substantial. He was arrested within 15 minutes of the robbery with red dye on his pants and car, wearing clothing described in detail by witnesses, and with a bank employee who stated at the scene of Mr. Feliciano's arrest that he was "100%" certain that Mr. Feliciano was the robber. Given the strength of the evidence, the Court cannot say that counsel's recommendation that Mr. Feliciano plead guilty was outside of the realm of competent advice. As to the value of the stipulation itself, the stipulation allowed Mr. Feliciano to avoid prosecutions for two additional serious felonies and to receive a promise from the Government not to advocate for an upward departure. Once again, given what he received in return for his stipulation, the Court does not find counsel's performance deficient.

3. *Sentencing Hearing*

Mr. Feliciano advances three claims with respect to his sentencing, arguing that counsel: (1) failed to call a psychologist as an expert witness at sentencing in support of a downward departure for diminished capacity; (2) failed to object to ¶ 52 of the presentence investigation report, which documented a robbery conviction for 16 bank robberies and added three points to Mr. Feliciano's criminal history score, when, according to Mr. Feliciano, those 16 robberies were consolidated as one case and should have only counted as one point; and (3) failed to object to "prosecutorial misconduct" during the sentencing hearing.

First, Mr. Feliciano contends that his counsel should have called an examining psychologist as an expert witness at sentencing in support of a downward departure for diminished capacity. In his objections to the Government's opposition, he also argues more

generally that counsel was ineffective at the sentencing hearing, both for neglecting to properly call the Court's attention to a psychological report by filing a motion and for not properly preparing for the sentencing hearing by filing motions and/or objecting at sentencing.

With respect to counsel's failure to argue for a diminished capacity defense, the Sentencing Guidelines do not allow for a downward departure for diminished capacity in a case like this, in which the defendant threatened violence in the course of committing his crime. *See* U.S.S.G. 5K2.13 (setting forth criteria for downward departures for diminished criteria and specifically barring such a departure when the crime involved "actual violence or a serious threat of violence"). Thus, his counsel could not be considered ineffective for failing to raise a meritless argument. As to Mr. Feliciano's more general arguments about counsel's performance, his contentions that defense counsel simply did not prepare for or file motions regarding sentencing are inaccurate. Defense counsel did file a sentencing memorandum, which included a motion for a downward variance. The motion included as exhibits a 12-page psychological report by a clinical and forensic psychologist and a report by an internal medicine physician regarding the impact of cessation of certain medications on Mr. Feliciano prior to his criminal conduct. Thus, Mr. Feliciano's counsel did, in fact, bring to the Court's attention expert reports regarding Mr. Feliciano's mental health. He also argued vigorously for leniency, thoroughly outlining the circumstances in Mr. Feliciano's personal life at the time of the bank robbery. It is evident, then, that Mr. Feliciano's counsel did prepare for the sentencing hearing, that he did advocate on behalf of his client by filing motions and bringing to the Court's attention various mitigating circumstances, and that counsel's performance was not deficient.

With regard to the second claim, Mr. Feliciano has not shown that his criminal history score, as calculated in the presentence investigation report and adopted by the Court, was

incorrect.  He argues that a previous conviction for 16 bank robberies should have counted for only one point because the cases were consolidated, rather than 3 points, and that his counsel was ineffective for not objecting to the calculation.  Mr. Feliciano's calculations are flawed, however. Under the sentencing guidelines, Mr. Feliciano was correctly assigned 3 points for his previous robbery conviction because it occurred within 15 years of the bank robbery prosecuted in this case and because he received a sentence greater than one year and one month.  *See* U.S.S.G. §§ 4A1.1(a), 4A1.2(a), (e)(1).  In addition, Mr. Feliciano was assigned three more criminal history points because additional points, up to a maximum of three, are added for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because the sentence was counted as a single sentence, and Mr. Feliciano was sentenced at the same time for all 16 prior robberies.  *See* U.S.S.G. § 4A1.1(e); U.S.S.G. § 4A1.1, Application Note 5.  Therefore, even if his conviction only garnered one point, the three additional points under U.S.S.G. § 4A1.1(e) would have placed him in the same criminal history category.  Because there was no error in calculating his guidelines range and because, even if Mr. Feliciano was correct, the outcome would have been the same, his counsel was not ineffective for failing to object.

As to his third claim, that counsel failed to object to "prosecutorial misconduct" at the sentencing hearing, Mr. Feliciano does not specify to what conduct he refers, although he does cite four pages of the sentencing hearing transcript, more specifically pages 27 through 30 of the July 7, 2014 Sentencing Hearing transcript.  In those four pages, the Government made comments about Mr. Feliciano's past criminal conduct that related to factors considered by the Court in sentencing and that responded to defense counsel's argument for a downward departure. Nothing about those comments crossed over into impropriety; rather they were precisely the type

of comments expected of prosecutors at a sentencing hearing at which the defense argues for leniency. Therefore Mr. Feliciano's counsel was not ineffective in failing to raise an objection.

## B.       Hearing

A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 unless the motions, files and records of the case show conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). Although the baseline the movant must meet to secure an evidentiary hearing is admittedly low, *Booth*, 432 F. 3d at 546, it is clear from the files and records of the case that Mr. Feliciano is entitled to no relief, and so he is not entitled to a hearing in this case.

## C.       Certificate of Appealability

When a district court issues a final order denying a § 2255 petition, the court must also make a determination about whether a certificate of appealability should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination regarding whether a certificate should issue. Based upon the motion and files and records of the case, and for the reasons set forth herein, the court finds that Mr. Feliciano has not exhibited a substantial denial of a constitutional right. A certificate will therefore not issue.

**CONCLUSION**

For the reasons discussed above, Mr. Feliciano's § 2255 petition will be denied, and a

Certificate of Appealability will not issue. An appropriate order follows.


BY THE COURT:


 /s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge